UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MEGAN HOLVE,
*individually and on behalf of all others similarly situated*,

        Plaintiff,

                                            Case # 16-CV-6702-FPG

v.

                                            DECISION AND ORDER

McCORMICK & COMPANY, INC.,

        Defendant.

## INTRODUCTION

Plaintiff brings this putative class action alleging that Defendant McCormick & Company, Inc. deceptively marketed certain products as "natural." The Complaint (ECF No. 1) asserts claims for unjust enrichment under New York Common Law and Maryland Common Law, violations of Maryland Commercial Code § 13-301 ("MCC"), and New York General Business Law §§ 349, 350 ("GBL"). Plaintiff seeks to represent a nationwide class of all United States residents or, alternatively, a statewide class of all New York residents who purchased certain McCormick products, for personal use and not resale, since October 27, 2012.

Defendant moves to dismiss Plaintiff's claims or, in the alternative, to stay the action pending the Food and Drug Administration's ("FDA") rulemaking concerning the use of the term "natural" on food labeling and the United States Department of Agriculture's ("USDA") rulemaking concerning labeling of bioengineered foods. ECF No. 8. For the reasons stated below, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART, and Defendant's Motion to Stay is GRANTED.

# BACKGROUND

Defendant is a Maryland-based corporation that manufactures, markets, advertises, and sells various spice and seasoning products with the word "natural" on their front packaging. ECF No. 1 ¶¶ 1-3, 37. Plaintiff's Complaint lists 29 specific spice and seasoning products, which Plaintiff alleges were deceptively labeled as "natural."[1] ECF No. 1 at 2-3. The Products' labels are attached to Plaintiff's Complaint as "Exhibit A" and show that 19 of the 29 Products are labeled "with natural spices," 5 are labeled as "natural," and 5 are labeled as "all natural." *See* ECF No. 1 at 32-42. Plaintiff alleges that Defendant's use of the "natural" descriptor is an effort to increase sales and "take advantage of" the rapidly growing natural foods market. *Id.* ¶¶ 5, 56.

Plaintiff also alleges that, rather than being "natural," the Products "contain[ ] unnatural, synthetic, artificial, and/or genetically modified ingredients, including but not limited to, corn starch, white corn flour, and citric acid." *Id.* ¶ 38. Plaintiff alleges that these ingredients render the "natural" label "untrue, misleading and likely to deceive reasonable consumers" because "the ingredients are, in fact, highly-processed, synthetic, and/or genetically modified." *Id.* ¶¶ 40, 46. According to Plaintiff, "[g]enetically modified crops do not occur in nature, and as such are not 'Natural.'" *Id.* ¶ 47. "Monsanto, one of the largest producers of genetically modified crop seed . . . defines Genetically Modified Organisms ('GMO') as 'any organism the genetics of which have been altered through the use of modern biotechnology to create a novel combination of genetic material." *Id.* Similarly, the World Health Organization defines GMOs as "organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally."[2] *Id.* ¶ 51. Plaintiff

---

[1]    The Complaint defines these 29 products and "[a]ll other substantially similar [p]roducts" as "Products." Hereinafter, the defined term "Products" has the same meaning as in Plaintiff's Complaint.

[2]    "Genetically Modified Organism" is abbreviated as "GMO" in the Complaint. The Court adopts and will use this acronym here as well.

alleges that "almost all corn in the United States is grown from seeds that have been genetically modified, and as such, almost all corn and corn-based ingredients in the United States are in fact unnatural." *Id.* ¶ 48. More specifically, Plaintiff alleges that white corn flour and corn starch are derived from GMOs and genetically engineered seeds. Additionally, Plaintiff alleges that citric acid is made through a synthetic process that "utilizes GE sugar beets and GE maize."[3] *Id.* at ¶ 50.

Plaintiff alleges that she and the putative class members relied on Defendant's labeling misrepresentations, which were made "[t]hrough a variety of advertising, including the front packaging of the Products." *Id.* ¶¶ 39-40. The gravamen of the Complaint is that Plaintiff and the putative class members "paid a price premium over and above the value of Defendant's products that did not claim to be 'Natural,'" and were "deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant." *Id.* ¶¶ 44, 67. Plaintiff, on behalf of herself and the putative class, requests various monetary, declaratory, and injunctive relief. *See* ECF No. 1 at 30.

## LEGAL STANDARDS

### I. Rule 12(b)(1) Standard

"A Rule 12(b)(1) motion is the proper channel for dismissal when the district court lacks the statutory or constitutional power to adjudicate a matter." *Church v. Fin. Recovery Servs., Inc.*, No. 16-CV-6391-FPG, 2018 WL 1383231, at *1 (W.D.N.Y. Mar. 19, 2018) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)) (internal quotation marks omitted).

> When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the 'Pleading'), the plaintiff has no evidentiary burden. The task of the district court is to determine whether the Pleading allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.

---

[3]     It does not appear that the Complaint defines "GE," but, based on context, it seems the term likely means Genetically Engineered.

*John v. Whole Foods Market Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016)) (internal quotation marks omitted).

## II.       Rule 12(b)(6) Standard

Rule 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When presented with a motion to dismiss under Rule 12(b)(6), the reviewing court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor," *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Under Rule 8(a)(2), "a pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotation marks omitted). To satisfy this standard, a complaint need not contain "detailed factual allegations but it demands more than unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citation and internal quotation marks omitted).

To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim is plausible when its factual content allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Bryant v. Silverman*, No. 15 Civ. 8427 (PAC)(HBP), 2018 WL 895650, at *6 (S.D.N.Y. Feb. 14, 2018) (citing *Ashcroft*, 556 U.S. at 678) (internal quotation marks omitted). This plausibility standard is a lower threshold than a "probability requirement," however, it requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.*

In reviewing the sufficiency of a complaint under Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 662 F.3d 104, 111 (2d Cir. 2010). "Whether a document is attached to a complaint is self evident." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). A court may also consider a document that is "integral" to the complaint. "A document is integral to the complaint where the complaint relies heavily upon its terms and effect." *Lightner*, 271 F. Supp. 3d at 453 (citing *Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005) (internal quotation marks omitted)).

## DISCUSSION

### I.    Standing

Defendant challenges Plaintiff's standing to bring this suit. The Court considers these arguments first "[b]ecause standing is a jurisdictional matter." *See Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484(JS)(AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

"Article III standing and class standing are different issues that require separate consideration . . . ." *Reid v. GMC Skin Care USA Inc.*, No. 8:15-CV-277 (BKS/CFH), 2016 WL 403497, at *4 (N.D.N.Y. Jan. 15, 2016) (citations omitted). The Second Circuit explained this distinction in *Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014):

> In *NECA*, we addressed the murky line between traditional Article III standing and so-called 'class standing.' There, the named plaintiff had purchased RMBS certificates from the defendants. It asserted claims under §§ 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l (a)(2), 77o, on behalf of a putative class that included purchasers of all certificates that were issued under the same allegedly false and misleading SEC Shelf Registration Statement. Those certificates, however, had been sold in seventeen separate offerings with unique offering documents, and because the named plaintiff had purchased certificates in only two

of the seventeen offerings, the named plaintiff was asserting claims related to certificates (from the fifteen other offerings) that only absent class members owned. As we noted, the named plaintiff 'clearly lack[ed] standing to assert such claims on *its* behalf because it did not purchase those Certificates' and so was not injured by any misstatements the defendants might have made about them. We nonetheless considered whether the named plaintiff had 'class standing' to bring claims related to the certificates that it had not purchased on behalf of the absent class members who *had* purchased them.

*Id.* at 160 (2d Cir. 2014) (internal quotation marks and citations omitted) (alterations and emphasis in original).

Plaintiff's Complaint includes five causes of action. All five causes of action are brought by Plaintiff *individually* and also *on behalf of* the putative class. *See* ECF No. 1 at 23-25. Defendant challenges Plaintiff's Article III standing to pursue claims on her own behalf and class standing to bring claims on behalf of the putative class members. The Court considers Plaintiff's standing to bring her individual claims first, before turning to Plaintiff's claims brought on behalf of the putative class members.

### A. Plaintiff's Individual Claims

Defendant advances four arguments challenging Plaintiff's Article III standing: (1) Plaintiff "has not identified a concrete and particularized injury-in-fact;" (2) Plaintiff "fails to allege that she has been injured in a 'personal and individual way' by any product other than the Chicken Seasoning Mix;" (3) Plaintiff cannot "make claims with respect to the 28+ other Products she does not allege she purchased;" and (4) Plaintiff cannot bring claims for injuries under Maryland law because she "resides in New York and purchased the Chicken Seasoning Mix in New York, not Maryland." ECF No. 8-1 at 10, 21-25, 27, 29.

"To establish Article III standing, a plaintiff must show '(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the

injury will be redressed by a favorable decision." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015). The Second Circuit has "repeatedly described [the injury-in-fact] requirement as a low threshold, which helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *John*, 858 F.3d at 736 (internal citations and quotation marks omitted). "To successfully plead injury-in-fact, a plaintiff must only clearly allege facts demonstrating that she had a legally protected interest in a manner that is concrete and particularized and that defendant invaded that interest." *Harry v. Total Gas & Power N. Am.*, 889 F.3d 104, 110 (2d Cir. 2018) (alterations, internal quotation marks, and citations omitted).

The "manner and degree of evidence" necessary to support an injury-in-fact finding is commensurate "with the manner and degree of evidence required at the successive stages of the litigation." *John*, 858 F.3d at 736 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* (internal quotation marks omitted). Furthermore, when a defendant brings "only a 'facial' challenge" to a plaintiff's allegations of standing, the plaintiff "bears no evidentiary burden at the pleading stage." *Id.* at 736 (citing *Carter*, 822 F.3d at 56). A "facial challenge" is based solely on the allegations set forth in the complaint and its attached exhibits. *Carter*, 822 F.3d at 56. When reviewing a facial challenge, the court must determine if the pleadings allege "facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (alterations, internal quotation marks and citations omitted).

When a Complaint is "dismissed for lack of Article III standing, the dismissal must be without prejudice," because when a plaintiff lacks standing, the court lacks subject matter jurisdiction and, without such jurisdiction, "lacks the power to adjudicate the merits of the case." *Id.* (citations omitted).

### 1. Herbes de Provence Roasted Chicken & Potatoes Mix ("Chicken Seasoning Mix")

Defendant argues that Plaintiff "fails to allege any non-speculative basis upon which it could be concluded that the Chicken Seasoning Mix she purchased contained any ingredient that made its label misleading" for two reasons: (1) Plaintiff "does not identify *any* of the ingredients contained in the Chicken Seasoning Mix she allegedly purchased" and (2) "even assuming . . . that [Plaintiff] did allege that the Chicken Seasoning Mix she purchased contained corn starch, white corn flour or citric acid, [Plaintiff] does not plausibly allege that those ingredients were 'unnatural, synthetic, artificial, and/or genetically modified.'" *See* ECF No. 8-1 at 23-24.

In her Complaint, Plaintiff alleges that she "purchased one or more of the Products . . . including, but not limited to" the Chicken Seasoning Mix. ECF No. 1 ¶ 72. Plaintiff alleges that "[t]he Products uniformly claimed to be 'Natural,' when in fact, they were not, because they contained unnatural, synthetic, artificial, and/or genetically modified ingredients, including but not limited to" three ingredients which Plaintiff specifically identifies: corn starch, white corn flour, and citric acid. ECF No. 1 ¶ 38; *see also id.* ¶ 46.

The term "Products" is defined in Plaintiff's Complaint to include the Chicken Seasoning Mix. *Id.* ¶ 1. Thus, despite Defendant's contention that Plaintiff "does not identify *any* of the ingredients contained in the Chicken Seasoning Mix," by alleging that the *Products* contained corn starch, white corn flour, and citric acid, Plaintiff also alleges that the *Chicken Seasoning Mix* contained these ingredients. Furthermore, the Chicken Seasoning Mix's label, which Plaintiff attached to her Response in Opposition to Defendant's Motion,[4] reveals that the product contains corn starch and citric acid. *See* ECF No. 10-3 at 10-11.

---

[4]    The Court may properly consider matters outside the pleadings when reviewing standing. *See, e.g.*, *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 378 (S.D.N.Y. 2002).

With respect to the "natural" nature of these three ingredients, Plaintiff alleges that: citric acid is "made synthetically by the fermentation of glucose," ECF No. 1 ¶ 50; white corn flour and corn starch "are derived from GMO and GE seeds" and "89% of corn in the United States is genetically modified," *id*. ¶ 49 n.2; these ingredients are "highly-processed, synthetic, and/or genetically modified, and thus, are unnatural," *id*. ¶ 46; and "[t]he presence of these ingredients in the Products caused the Products to not be 'Natural,'" *Id*.

Defendant argues that these allegations fall short because Plaintiff has not shown that the citric acid in the Products was synthetic, since citric acid may be natural or synthetic. ECF No. 11 at 11-12. Similarly, Defendant maintains that Plaintiff has not shown that the white corn flour and corn starch in the Products were derived from genetically engineered corn seeds, since only 89% of the corn grown in the United States is genetically modified. *Id*. However, taken as true, and with all reasonable inferences drawn in Plaintiff's favor, these allegations make it plausible that Plaintiff paid an inflated price for Chicken Seasoning Mix labeled as natural which was, in fact, unnatural. ECF No. 1 ¶¶ 1, 38, 46, 49, 50; *id*. at 15 n.2. Plaintiff "bears no evidentiary burden" at the pleading stage, and the questions Defendant raises are "evidentiary obstacles on the merits" rather than impediments to adequately pleading an injury-in-fact. *See John*, 858 F.3d at 737; *see also Carter*, 822 F.3d at 56 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice for *on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim*.") (emphasis and alterations in original); *In re Frito-Lay N. Am., Inc. All Natural Litig*., No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *11 (E.D.N.Y. Aug. 29, 2013) (concluding that "plaintiffs, as individuals, have Article III standing" to bring claims related to the "certain Tostitos, SunChips, and Bean Dip products" they claimed to have purchased).

The Court finds that Plaintiff has adequately alleged a concrete and particularized injury-in-fact related to her purchase of the Chicken Seasoning Mix. Accordingly, Defendant's Motion to Dismiss Plaintiff's claims arising from her purchase of the Chicken Seasoning Mix is DENIED.

## 2. Other Products

The Court must next determine whether Plaintiff's allegations are sufficient to confer Article III standing for the "Other Products."[5] Plaintiff argues that, because she has satisfied Article III standing with respect to the Chicken Seasoning Mix, the issue of her standing to bring claims as to the Other Products is "premature and should be addressed at the class certification stage.'" ECF No. 10 at 26. This argument fails.

Although Plaintiff established Article III standing for claims related to the Chicken Seasoning Mix, she must still demonstrate standing to bring her own individual claims related to the Other Products. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) ("It is well established that a plaintiff must demonstrate standing for each claim [s]he seeks to press. Thus, *with respect to each asserted claim*, [a] plaintiff must always have suffered a distinct and palpable injury to [her]self." (alterations and emphasis in original) (citations and internal quotation marks omitted)).

Furthermore, consideration of whether Plaintiff has Article III standing for individual claims related to the Other Products is not "premature." The Second Circuit has rejected the notion that class certification should, as a matter of course, be analyzed before Article III standing. *See Mahon*, 683 F.3d at 64 (discussing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) and rejecting the Seventh Circuit's interpretation of *Ortiz* "as a 'directive to consider issues of class certification prior to issues of standing'" (citing *Payton v. Cty. of Kane*, 308 F.3d 673, 680-82 (7th

---

[5] The Court defines "Other Products" as all Products listed in the Complaint other than the Chicken Seasoning Mix.

Cir. 2002), *cert. denied sub nom.*, *Carroll Cty. v. Payton*, 540 U.S. 812 (2003))); *see also In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) ("[T]he Second Circuit has made clear that Article III standing is generally a prerequisite to class certification." (citations omitted)).

Analysis of class certification before standing is appropriate "when resolution of class certification obviates the need to decide issues of Article III standing." *Mahon*, 683 F.3d at 65. Here, a class certification ruling would not resolve whether Plaintiff' has Article III standing to bring individual claims on her own behalf related to the Other Products. Plaintiff still must demonstrate that she has standing to bring such claims. *See Lewis*, 518 U.S. at 357 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976) (citation omitted))). Accordingly, the Court proceeds to review Plaintiff's standing to bring claims related to the Other Products.

Plaintiff alleges that she "purchased one or more of the Products during the Class Period, including, but not limited to, a purchase of [Defendant's Chicken Seasoning Mix], during 2014 from a Wegmann's [sic] Supermarket located in Rochester, Monroe County, New York, for the purchase price of approximately $3.00 to $4.00." ECF No. 1 ¶ 72. The only factual details alleged relate to Plaintiff's purchase of the Chicken Seasoning Mix. There are no specific allegations regarding the purchase of any of the Other Products—leaving the Court to speculate *which* of the Other Products Plaintiff purchased. As a result, Plaintiff has failed to establish a causal connection between the Other Products and her injuries. *See NECA-IBEW Health & Welfare Fund v. Goldman*

*Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012) (finding that the plaintiff "clearly lack[ed] standing to assert claims on its behalf" for mortgage-backed certificates it did not purchase); *see also In re Frito-Lay North Am., Inc. All Natural Litig.*, No. 12–MD–2413 (RRM)(RLM), 2013 WL 4647512, at *11 (E.D.N.Y. Aug. 29, 2013) (finding that the plaintiffs lacked Article III standing to bring claims on their own behalf "arising out of products that they themselves did not purchase"). The Court, therefore, finds that Plaintiff lacks standing to assert claims on her own behalf related to the Other Products.

Accordingly, Plaintiff's claims brought on her own behalf arising out of the purchase of the Other Products are DISMISSED without prejudice for lack of Article III standing and Defendant's Motion to Dismiss such claims is GRANTED. Plaintiff may press on with claims on her own behalf related to the Chicken Seasoning Mix.

### 3. Maryland Claims

Plaintiff brings claims for a violation of the Maryland Commercial Code §13-301 and for unjust enrichment under Maryland Common Law, both individually and on behalf of the putative class members. *See* ECF No. 1 at 24-25. Defendant argues that because Plaintiff resides in New York and only alleges that she purchased the Chicken Seasoning Mix in New York, she lacks standing to bring claims under Maryland law. ECF No. 8-1 at 29. Therefore, the issue is whether Plaintiff's alleged purchase in New York confers standing to bring her individual claims on her own behalf under Maryland law.

In *Edwards v. N. Am. Power & Gas, LLC*, the court was presented with a similar issue. 120 F. Supp. 3d 132 (D. Conn. 2015). The plaintiff in *Edwards* brought claims against the defendant, an electricity supplier, for alleged marketing misrepresentations related to customer rates, under the unfair trade practice statutes of Maine, New Hampshire, Rhode Island, and Connecticut. *Id.* at

135-36. In moving to dismiss the plaintiff's claims under Rule 12(b)(6), the defendant argued that the plaintiff, a Connecticut resident, lacked standing to assert claims under the Maine, New Hampshire, and Rhode Island statutes. *Id*. at 137. The *Edwards* court noted that, even though the defendant operated its electricity supply services in Maine, New Hampshire, and Rhode Island, the plaintiff "[did] not claim that he subscribed personally" to the energy services in any of those states. *Id*. at 139. The court, citing the Supreme Court's decision in *Lujan*, reasoned that, because the plaintiff had not subscribed to the defendant's energy plans in Maine, New Hampshire, and Rhode Island, the defendant's conduct in those states did not impact the plaintiff "in a personal and individual way" in those states. *Id*. at 139. The court thus concluded that the plaintiff failed to establish an "injury-in-fact" in Maine, New Hampshire, and Rhode Island and dismissed the plaintiff's claims under the laws of those states without prejudice for lack of standing. *Edwards*, 120 F. Supp. 3d at 139-40.

The *Edwards* court's reasoning is instructive here. Plaintiff has only alleged that she purchased the Products in New York. She does not allege that she purchased the Products in Maryland, and, thus, she has failed to allege that Defendant's conduct in Maryland impacted her "in a personal and individual" way. *Id*. at 139. Plaintiff has not alleged that she suffered an injury-in-fact in Maryland and, accordingly, she lacks standing to bring her Maryland law claims. *See id*. at 139; *see also Simington v. Lease Fin. Grp., LLC*, No. 10 Civ. 6052(KBF), 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) ("Plaintiffs do not have an injury traceable to conduct that occurred in any other state than those in which they conduct business and thus, they cannot assert a claim under those states' consumer fraud statutes.").

Plaintiff attempts to circumvent this infirmity by asserting that she has standing to bring claims under Maryland law because Defendant is a Maryland corporation headquartered in

Maryland, and the alleged labeling misrepresentations "originated in, and emanated from, Maryland." ECF No. 10 at 26-27. This argument fails for two reasons. First, though Plaintiff now asserts that Defendant's alleged labeling misrepresentations "originated in, and emanated from, Maryland," her Complaint lacks factual allegations that support this theory. *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general *factual allegations* of injury resulting from defendant's conduct may suffice . . . .") (emphasis added). Second, even assuming Defendant's mislabeling "originated in" and "emanated from" Maryland, the alleged injuries that Plaintiff and the putative class members suffered depend upon the purchase of the Products. Plaintiff's injury occurred when she allegedly reviewed the "natural" label on the Product, relied on the label in deciding to purchase it, and ultimately purchased it at a premium price—all of which occurred in New York.

Accordingly, Defendant's Motion to Dismiss Plaintiff's claims brought under Maryland law is GRANTED. Plaintiff's individual claims under Maryland law are DISMISSED without prejudice.[6]

### B. Putative Class Members' Claims

### 1. Products Plaintiff Did Not Purchase

Defendant argues that, regardless of whether Plaintiff has Article III standing to assert individual claims for products she did not purchase, Plaintiff "lacks *class standing* to assert claims *on behalf of* class members for products that [Plaintiff] did not purchase." *Id.* at 28 (emphasis in original). Though Plaintiff lacks Article III standing to pursue claims *on her own behalf* related to Products other than the Chicken Seasoning Mix, she may well have "class standing" to bring such claims *on behalf of the putative class. See NECA-IBEW*, 693 F.3d at 158 (finding the district court

---

[6]     Defendant also argues that the Court lacks personal jurisdiction over Plaintiff's Maryland law claims. ECF No. 8-1 at 29 n.9; ECF No. 11 at 14. The Court need not reach this argument, as Plaintiff's Maryland law claims are dismissed for lack of standing.

erred in concluding that the plaintiff-fund, which lacked Article III standing to assert claims on its behalf related to certain certificates it did not purchase, "necessarily lacked standing to assert claims *on behalf of* purchasers" who did purchase those certificates (emphasis in original)); *see also In re Frito-Lay*, 2013 WL 4647512, at *11 (stating that the *NECA* court "reinforced that standing to assert claims on behalf of other purchasers did not turn on whether the plaintiff had Article III standing for the offerings it did not purchase").

To establish class standing in a putative class action, a plaintiff must plausibly allege: "(1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Ret. Bd. of Policemen's Annuity*, 775 F.3d at 161. "When this standard is satisfied, the named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf." *Id.*

According to Plaintiff, Defendant's argument that Plaintiff lacks standing to bring claims on behalf of the putative class members who purchased Products that she did not purchase is "materially indistinguishable" from the argument that Plaintiff lacks standing to pursue individual claims related to Products that she did not purchase. ECF No. 10 at 26. This assertion is patently false. The Second Circuit has clearly stated that a plaintiff, though lacking Article III standing to pursue certain claims *on her own behalf*, may nonetheless possess "so-called 'class standing'" to pursue those same claims *on behalf of putative class members*. *See Ret. Bd. of Policemen's Annuity*, 775 F.3d at 160-61.

Plaintiff also contends that the question of whether she may sue on behalf of purchasers of Products that she did not purchase is premature, and should be examined when the Court rules on

a class certification motion. ECF No. 10 at 26. However, because class standing and class certification are two distinct inquiries, the Court may properly rule on Plaintiff's class standing at the motion to dismiss stage. *See Ret. Bd. of Policemen's Annuity*, 775 F.3d at 161 ("*NECA's* two-part test, which derives from constitutional standing principles, is . . . distinct from the criteria that govern whether a named plaintiff is an adequate class representative under Rule 23(a)." (citation omitted)); *see also NECA*, 693 F.3d at 158 n.9 ("In any event, NECA's standing to assert claims on others' behalf is an inquiry separate from its ability to represent the interests of absent class members under Fed. R. Civ. P. Rule 23(a)."); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016) ("Upon review of the Second Circuit's precedent on this issue, the Court finds that Buonasera has sufficiently alleged class standing at the motion to dismiss stage.").[7] Convinced that it may do so at this time, the Court turns to whether Plaintiff has sufficiently alleged class standing.

Plaintiff clearly satisfies the first prong of *NECA*'s class standing test. She has adequately pled that she personally suffered an actual injury resulting from Defendant's putatively illegal conduct. As discussed, Plaintiff has alleged that she purchased the Chicken Seasoning Mix at an inflated price based upon Defendant's misrepresentations that the product was "natural," when it was not.

Defendant attacks the second prong, arguing that Plaintiff lacks class standing because "[h]er individual claims do not 'implicate the same set of concerns' as the purported class claims

---

[7]      Several district courts in this Circuit have declined to examine class standing until the class certification stage. *See Buonasera*, 208 F. Supp. 3d at 562 ("Many courts have construed the Second Circuit's findings . . . to indicate that the issue of class standing should not be resolved on a motion to dismiss but rather on a motion for class certification.") (collecting cases). However, given that the class standing test "derives from constitutional standing principles" and the Second Circuit has "rejected the . . . argument that standing law has nothing to say about [a] plaintiff's ability to assert absent class members' claims," the Court finds the propriety of such a practice to be dubious at best. *See Ret. Bd. of Policemen's Annuity*, 775 F.3d at 160-61. A plaintiff's constitutional standing is a jurisdictional matter and, as such, requires examination when called into question. *See Elkind*, 2015 WL 2344134, at *3.

because the Products all have different labels and ingredients." ECF No. 11 at 13.[8] However, the Court finds that, because the "nature and content of the specific misrepresentation alleged" regarding the Chicken Seasoning Mix "is similar with respect to the unpurchased products," Plaintiff's individual claims implicate the same set of concerns as the purported class claims. *See Buonasera*, 208 F. Supp. 3d at 563 (citing *NECA*, 693 F.3d at 162).

Plaintiff alleges that all Products were deceptively labeled "natural" because they actually contained unnatural and synthetic ingredients like white corn flour, corn starch, and citric acid. ECF No. 1 ¶¶ 38-39. Although some of the Other Products may contain ingredients different from those in the Chicken Seasoning Mix and the exact representation on some of the Other Product labels may vary,[9] each of the Other Products contains a representation that uses the word "natural" and is "sufficiently similar" to the alleged misrepresentation on the Chicken Seasoning Mix. *See id*. (finding that the "misrepresentation claimed with respect to the unpurchased products [was] sufficiently similar to the misrepresentation for the purchased products" even though "the unpurchased products may contain different ingredients compared to the purchased products").

---

[8] In Defendant's initial briefing, Defendant presented the second prong of the class standing test in bold and italic text, presumably to suggest that Plaintiff failed to meet that prong. *See* ECF No. 8-1 at 27. Defendant's initial briefing on the matter also included case illustration parentheticals and the bald assertion that Plaintiff lacked class standing to assert claims on behalf of class members for products Plaintiff did not purchase. *Id*. at 27-28. It did not include a substantive argument with facts specific to this case. In fact, Defendant did not assert *why* Plaintiff's allegations do not implicate the same set of concerns in this case until asserting in its reply brief that Plaintiff's "individual claims do not 'implicate the same set of concerns' as the purported class claims because the Products all have different labels and ingredients." ECF No. 11 at 13. Nonetheless, and to the extent Defendant's specific argument as to the second part of class standing test could be considered raised in the first instance in its reply, the Court is considering this issue *sua sponte* because the class standing test "derives from constitutional principles," *see Ret. Bd. of Policemen's Annuity*, 775 F.3d at 161, and, as such "goes to this Court's subject matter jurisdiction" and "can be raised *sua sponte*," *see Bender v. Obama*, No. 15-CV-4776(JS)(ARL), 2015 WL 13001538, at *1 (E.D.N.Y. Oct. 1, 2015).

[9] The Chicken Seasoning Mix packaging includes an "all natural" label. *See* ECF No. 10-3 at 10. Each of the Other Product's packaging contains one of the following representations: "with natural spices," "all natural," or "natural." *See generally id*.

Accordingly, the Court finds that Plaintiff has standing to pursue claims related to the Other Products under New York law on behalf of the putative class members. Defendant's Motion to Dismiss these claims is DENIED, however, Defendant may present this issue again at the class certification stage. *See id.*

### 2. Maryland Law Claims

As discussed above, Plaintiff lacks standing to bring claims on her own behalf under Maryland law. However, Plaintiff is not required to have individual standing for the Maryland law claims to advance those claims on behalf of putative class members. *See Langan v. Johnson & Johnson Cos., Inc.*, No. 17-1605, 2018 WL 3542624, at *5 (2d Cir. July 24, 2018) ("Since class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing . . . .").

Whether Plaintiff can bring claims on behalf of the putative class members who may have standing to sue under Maryland law "is an issue best addressed under Rule 23, rather than as a standing issue." *See id.* at *5. Thus, the Court will consider whether Plaintiff can bring the putative class members' Maryland law claims at the class certification stage. *See id.* at *6 ("[W]hether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III.").

### C. Injunctive Relief

Defendant argues that Plaintiff "does not allege that she is likely to purchase the Products again" and thus has "not alleged that she is likely be subjected to future injury and lacks standing to claim injunctive relief." ECF No. 8-1 at 25.

A plaintiff lacks standing to seek injunctive relief where she is "unable to establish a real or immediate threat of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citations and internal quotation marks omitted). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id.* (citation omitted).

Plaintiff asserts that she has standing for injunctive relief because she alleges that she "would purchase the Product again if it was not misbranded." ECF No. 10 at 24. By her own admission, however, Plaintiff will purchase the Products in the future only if Defendant alters its branding. ECF No. 1 ¶ 80. Plaintiff therefore lacks standing to seek injunctive relief because she has not demonstrated a real or immediate threat of injury. *See Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230, at *6 (S.D.N.Y. Aug. 11, 2017) ("[Plaintiff] stated in her sworn Declaration that she will not make further DVD purchases from [Defendant] until it changes its website. This admission deprives [Plaintiff] of standing because she has stated she intends to avoid future harm and concedes that her own conduct can prevent future harm." (internal citation omitted)); *Atik v. Welch Foods, Inc.*, No. 15-CV-5405 (MKB) (VMS), 2016 WL 5678474, at *6 (E.D.N.Y. Sept. 30, 2016) ("Plaintiffs also allege that they would resume purchasing the Products in the future but only if the representations on the Products' labels were 'truthful and non-deceptive.' These allegations are insufficient to establish a likelihood of future injury because Plaintiffs cannot rely on past injury." (internal citation omitted)).[10]

---

[10]     District courts in this Circuit "have differed as to whether plaintiffs seeking injunctive relief for consumer deception will be able to demonstrate standing where, as here, they allege they would buy the products in the future if not mislabeled." *See Podpeskar v. Dannon Co., Inc.*, No. 16-cv-8478 (KBF), 2017 WL 6001845, at *4 n.2 (S.D.N.Y. Dec. 3, 2017) (collecting cases). However, the Court's finding is consistent with recent Second Circuit precedent and

Furthermore, without individual standing to pursue injunctive relief, Plaintiff may not represent the purported class with respect to injunctive relief. *See Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474 (BKS/TWD), 2017 WL 5001444, at *16 (N.D.N.Y. Sept. 27, 2017) ("Without standing, Plaintiff may not represent the proposed class for purposes of seeking injunctive relief.") (citing *Nicosia*, 834 F.3d at 239).

The Court finds that Plaintiff has failed to demonstrate any likelihood that Defendant's allegedly deceptive labeling will harm her in the future and thus she lacks standing to seek injunctive relief. Accordingly, Defendant's Motion to Dismiss Plaintiff's request for injunctive relief is GRANTED, and Plaintiff's claims for injunctive relief are DISMISSED without prejudice.

## II.    Federal Preemption

Defendant argues that Plaintiff's claims are expressly preempted by the National Bioengineered Food Disclosure Standard ("NBFDS"), 7 U.S.C. § 1639. ECF No. 8-1 at 12. The NBFDS directs the Secretary of the USDA to "establish a national mandatory bioengineered food disclosure standard with respect to any bioengineered food" by July 29, 2018.[11] 7 U.S.C. §

---

several district courts in this Circuit that have addressed the issue. *See e.g. Nicosia*, 834 F.3d at 239 (finding no standing where plaintiff "has failed to allege that he intends to use Amazon in the future to buy *any* products" (emphasis in original)); *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018) (summary order) (finding no standing where plaintiff conceded that, "now that he knows of Defendants' alleged deception and false advertising, . . . he is no longer likely to purchase another pair of Dr. Scholl's Custom Fit Orthotics ever again" (alterations omitted)); *Alce v. Wise Foods, Inc.*, No. 17 Civ. 2402 (NRB), 2018 WL 1737750, at *6 (S.D.N.Y. Mar. 27, 2018) (finding that "[c]onsumers who were misled by deceptive food labels lack standing for injunctive relief because there is no danger that they will be misled in the future" (citation omitted)); *Buonasera*, 208 F. Supp. 3d at 564 (finding plaintiff's allegation that, "[i]f [defendant's] products were reformulated such that its representations were truthful, [p]laintiff would consider purchasing [defendant's] products in the future" insufficient to allege future injury); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 296 (S.D.N.Y. 2015) (finding no standing where "[c]omplaint contains no allegations that [plaintiff] intends to purchase the Bedtime Products again"). *But see Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *5 (S.D.N.Y. Mar. 30, 2018) (finding that the plaintiff had standing where "[p]laintiff twice conveyed a willingness to purchase [d]efendant's product when she stated that she would purchase the Products again if the ingredients were changed so that they indeed were Natural.") (internal quotation marks omitted) (citing *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 397-98 (S.D.N.Y. 2016)); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 542-43 (E.D.N.Y. 2017).

[11]      As of August 8, 2018, no announcement has been made regarding this national standard. A recently filed lawsuit in the Northern District of California seeks a declaration that the USDA is in violation of the July 29, 2018 deadline, and seeks a ruling that the USDA must implement the prescribed standard "as soon as reasonably

1639(b)(1). Among other things, the USDA Secretary must "determine the amounts of a bioengineered substance that may be present in food, as appropriate, in order for the food to be a bioengineered food." *Id*. §1639(b)(2)(B).

In addition to directing the USDA Secretary to establish standards, regulations, and procedures related to bioengineered food, the NBFDS bars states from taking certain actions regarding food labeling requirements and provides for "Federal preemption" of state labeling regulations. Specifically, the NFBDS provides that "no State . . . may directly or indirectly establish . . . any requirement relating to the labeling or disclosure of whether a food is bioengineered . . . that is not identical to the mandatory disclosure requirement" of the USDA's forthcoming national labeling standard. *Id*. § 1639b(e). Under the statute's preemption provision, no state

> may directly or indirectly establish . . . any requirement relating to the labeling of whether a food . . . or seed is genetically engineered . . . or was developed or produced using genetic engineering, including any requirement that a food or seed is or contains an ingredient that was developed or produced using genetic engineering.

*Id*. § 1639i(b).

The preemption doctrine is rooted in the Constitution's Supremacy Clause. *In re Kind LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 462 (S.D.N.Y. 2018) ("*Kind II*"). The Supremacy Clause provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "It is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law." *Hillsborough Cty. v. Automated Med. Labs.,*

---

practicable." *Ctr. for Food Safety, et al. v. Sonny Perdue, Secretary of the USDA, et al.*, No. 3:18-cv-04633 (N.D. Cal. Aug. 1, 2018).

*Inc.*, 471 U.S. 707, 712 (1985) (citation and internal quotation marks omitted); *see also N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010) (citation omitted).

"Preemption analysis rests on two fundamental principles." *N.Y. Pet Welfare Ass'n, Inc., v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017) (citation omitted). First, a preemption analysis begins "with the presumption that Congress did not intend to displace state law." *Id.* (citations omitted). This presumption arises from "respect for the States as independent sovereigns in our federal system." *Id.* To overcome it, the party asserting preemption must meet the "heavy burden" of showing "that the conflict between the federal and state laws is so direct and positive that the two . . . cannot be reconciled or consistently stand together." *Id.* (alterations in original) (citations and internal quotation marks omitted). Courts have held that this presumption "is especially strong in areas where states traditionally wield police powers." *Id.* (citations omitted). "The regulation of health and safety, including laws regulating the proper marketing of food, are traditionally within states' historic police powers." *Kind II*, 287 F. Supp. 3d at 462 (quoting *Kao v. Abbott Labs. Inc.*, No. 17-cv-02790-JST, 2017 WL 5257041, at *5 (N.D. Cal. Nov. 13, 2017)) (internal quotation marks omitted).

Second, the court must determine the intent of the statute or regulation. *See N.Y. Pet Welfare Ass'n, Inc.*, 850 F.3d at 87. Such determination is "a matter of judgment, to be informed by examining the federal [scheme] as a whole and identifying its purpose and intended effects." *Id.* (alterations in original) (quoting *In re MTBE Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013)).

Here, there is no question that NBFDS § 1639i(b) preempts state law. *See Kind II*, 287 F. Supp. 3d at 463 (finding it "clear" that § 1639i preempts state law); *Kao*, 2017 WL 5257041, at *6 ("There is no dispute that Section 1639i is a statute that explicitly preempts state law." (citation

and internal quotation marks omitted)). The preemption language of § 1639i provides that no state may

> directly or indirectly establish under any authority or continue in effect as to any food or seed in interstate commerce any requirement relating to the labeling of whether a food (including food served in a restaurant or similar establishment) or seed is genetically engineered (which shall include such other similar terms as determined by the Secretary of Agriculture) or was developed or produced using genetic engineering, including any requirement for claims that a food or seed is or contains an ingredient that was developed or produced using genetic engineering.

7 U.S.C. § 1639i(b). Thus, at issue here is whether Plaintiff's remaining claims fall within the scope of this provision. More specifically, the relevant question is whether, in asserting claims for unlawful deceptive acts or practices and false advertising under New York's General Business Law §§ 349-50 and unjust enrichment under New York common law, Plaintiff seeks to "directly or indirectly establish . . . any requirement related to the labeling of whether a food . . . or seed is genetically engineered."

Defendant contends that the NBFDS preempts all of Plaintiff's claims because Plaintiff seeks to prohibit the use of "natural" labeling on a food that contains a bioengineered ingredient, and thus would impose a "de facto labeling requirement" under state law. ECF No. 8-1 at 15. Defendant's logic is that such a requirement would be established if Plaintiff were to prevail because "consumers could determine *whether* a food contains bioengineered ingredients by looking at whether it is labeled 'natural.'" *Id.* (emphasis in original).

Defendant's arguments fail. Plaintiff's claims do not establish a "requirement." With respect to the unjust enrichment claim, Plaintiff seeks restitution for "deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Products." There is nothing about this cause of action that suggests it might establish a labeling requirement. Though Defendant asserts that the entire suit is preempted, it provides no reasoning why preemption applies to this claim in

particular. The Court finds that Plaintiff's unjust enrichment claim does not establish a labeling requirement and, therefore, is not preempted by the NBFDS. The Court turns next to Plaintiff's statutory claims.

The function of the GBL provisions underlying Plaintiff's claims is to protect consumers from untrue and misleading representations. *See Kind II*, 287 F. Supp. 3d at 463 (finding that "the state consumer protection statutes on which [p]laintiffs' claims rest[ed]," which included the GBL, "only provide[d] remedies for representations that [were] untrue and misleading"). Under Plaintiff's theory, the Products could contain genetically engineered ingredients, and the labeling could make no mention of such ingredients. The crux of Plaintiff's GBL claims is simply that, in labeling the Products as "natural" or "all natural," Defendant must be truthful, and not misleading. Such claims do not establish a food labeling requirement.[12] *See Kind II*, 287 F. Supp. 3d at 464 (finding state consumer protection claims, including GBL claims, not preempted by the NFBDS where plaintiffs "[did] not seek to impose new standards or requirements in connection with their consumer protection claims" and "simply want[ed] to ensure that [defendant's] labels [were] truthful"); *Kao*, 2017 WL 5257041, at *9 ("Unlike Vermont's preempted labeling statute, [p]laintiffs' claims do not seek to impose a new regulatory system or require a manufacturer to provide specific additional information to consumers. Rather they seek to ensure that products do not contain affirmative misrepresentations . . . .").

Moreover, Plaintiff does not seek to impose a labeling requirement above and beyond what is currently required. *See* ECF No. 1 ¶ 8 ("Plaintiff expressly does not seek to contest or enforce

---

[12]     Defendant correctly points out that, in seeking injunctive relief, Plaintiff requests the Court "order disclosures and/or disclaimers on the labeling or advertising of the Defendant's Products." ECF No. 1 ¶¶ 109, 121. The Court need not reach whether granting such relief would establish a "requirement" under the NBFDS because, as explained above, any claims for injunctive relief have been dismissed for lack of standing.

any state law that has requirements beyond those required by Federal laws or regulations."). Current FDA guidelines provide that "[f]ood manufacturers may voluntarily label their foods with information about whether the foods were not produced using bioengineering, as long as such information is truthful and not misleading." U.S. Food & Drug Administration: Guidance for Industry: Voluntary Labeling Indicating Whether Foods Have Not Been Derived From Genetically Engineered Plants (July 5, 2018), at Section II.B, *available at* https://www.fda.gov/ RegulatoryInformation/Guidances/ucm059098.htm. Plaintiff's challenge to Defendant voluntarily labeling its Products as "natural" or "all natural" is consistent with these guidelines. Thus, "the current [agency] guidance supports the Court's conclusion that allowing Plaintiff[ ] to pursue [her] state-law claims would not frustrate Congressional intent in enacting the express preemption provision." *Kind II*, 287 F. Supp. 3d at 463 (quoting *Kao*, 2017 WL 5257041, at *8).

For the reasons stated, and given the strong presumption against preemption in areas that fall within the ambit of the States' historic police powers, the Court finds that Plaintiff's remaining state law claims are not preempted by the NBFDS. Accordingly, Defendant's Motion to Dismiss Plaintiff's claims as preempted by the NBFDS is DENIED.

## III. Sufficiency of Claims

### A. GBL Claims

"New York's GBL §§ 349 and 350 prohibit '[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state' and materially misleading advertising, respectively." *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *6 (S.D.N.Y. Mar. 30, 2018) ) (alterations in original) (citing GBL §§ 349(a), 350. A plaintiff must allege the following to state a prima facie claim under GBL § 349: "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material

respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citing *Maurizo v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). Whether an act or practice is deemed "misleading in a material respect" turns on whether it would be misleading or deceptive "to a reasonable consumer acting reasonably under the circumstances." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). The elements of a claim under § 350 are the same as those under § 349, except that a plaintiff must also demonstrate that the claim relates specifically to false advertising. *See Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014) ("GBL § 350 prohibits false advertising and has the same elements as § 349 . . . .").

Claims under GBL §§ 349 and 350 "are not subject to the pleading-with-particularity requirements of Rule 9(b)." *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 67 (E.D.N.Y. 2017). The Court therefore analyzes whether Plaintiff's GBL claims meet the pleading requirements of Rule 8(a).

### 1. Products Labeled "with Natural Spices"

Defendant asserts that the Complaint should be dismissed with respect to the 19 Products that are labeled "with natural spices."[13] ECF No. 8-1 at 30. Plaintiff's individual claims related to these Products were dismissed above during the Court's Article III standing analysis. However, the Court will consider the sufficiency of Plaintiff's allegations related to these Products to evaluate the claims brought on behalf of the putative class members.

---

[13]     The 19 Products that are labeled "with natural spices" are as follows: Adobe Seasoning with Pepper Adobo con Pimenta; Au Jus Gravy Mix; Brown Gravy Mix; Brown Gravy Mix – 30% Less Sodium; Chicken Gravy Mix; Chicken Gravy Mix – 30% Less Sodium; Herb Gravy Mix for Beef; Hollandaise Sauce Mix; Homestyle Country Gravy Mix; Homestyle Gravy Mix; Mushroom Gravy Mix; Onion Gravy Mix; Original Country Gravy Mix; Peppered Country Gravy Mix; Pork Gravy Mix; Sausage Flavor Country Gravy Mix; Total Seasoning for Beef; Total Seasoning for Chicken & Fish; and Turkey Gravy Mix.

Defendant argues that the claims related to the "with natural spices" Products should be dismissed because Plaintiff has not alleged facts indicating that they contained spices that were not "natural." ECF No. 8-1 at 30. In response, Plaintiff asserts that "[d]iscovery will reveal the content of the 'natural spices' in Defendant's Products." ECF No. 10 at 30. The Court agrees with Defendant.

In her Complaint, Plaintiff alleges that the Products "uniformly claimed to be 'Natural'" and that their "packaging uniformly and consistently stated that the Products are 'Natural,'" ECF No. 1 ¶¶ 38, 42; the Products were not natural because they contained "unnatural, synthetic, artificial, and/or genetically modified ingredients," *Id.* ¶ 40; she relied on the "Natural" label "in deciding to purchase the Product," *Id.* ¶ 73; and she interpreted the "Natural" label "to mean that the Products did not contain any unnatural, synthetic, artificial, and/or genetically modified ingredients," *Id.* ¶ 74.

Although the labels attached to Plaintiff's Complaint reveal that the labeling on the Products varied—some were labeled "all natural," others "natural," and others "with natural spices"—Plaintiff's Complaint lacks factual allegations supporting claims related to the "with natural spices" labels. A representation that a product is made "with natural spices" is distinct from representations that a product is "natural" or "all natural." Because Plaintiff's Complaint contains no factual allegations supporting claims related to these Products, Plaintiff has failed to meet the Rule 8 pleading standard. *See Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029 (NSR), 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015) ("At minimum, even under the more permissive Rule 8(a) standard, a plaintiff challenging a product label as misleading must at least identify the product and the misleading label."); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("A plaintiff who alleges that he was deceived by an advertisement may not misquote

or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss . . . .").

Accordingly, Defendant's Motion to Dismiss Plaintiff's "with natural spices" claims brought on behalf of the putative class members is GRANTED, and those claims are DISMISSED.

### 2. Deceptive Conduct

All that remains are Plaintiff's individual New York law claims arising from her purchase of the Chicken Seasoning Mix, and her New York and Maryland law claims on behalf of the putative class members for the Products labeled "natural" and "all natural." Defendant asserts that Plaintiff has failed to allege that it engaged in deceptive conduct. ECF No. 8-1 at 31. Plaintiff has sufficiently alleged deceptive conduct and this argument fails.

Defendant argues that Plaintiff has not plausibly alleged "that any of the Products actually contain corn starch, corn flour or citric acid." *Id*. As discussed, Plaintiff claimed that Defendant committed deceptive conduct by labeling the Products as "natural," when they are not "natural" due to the presence of "unnatural, synthetic, artificial, and/or genetically modified ingredients." ECF No. 1 ¶ 40. Plaintiff also alleged that the ingredients that render the Products not "Natural" include, but are not limited to, corn starch, white corn flour, and citric acid. *Id*. ¶ 46. Furthermore, the Product ingredient labels, which the Court treats as integral to the Complaint, reveal that each Product labeled "natural" or "all natural" contains either corn starch, corn flour, or citric acid. *See* ECF No. 10-2. Taken together, these assertions plausibly allege that the Products were not "natural" because they contained synthetic ingredients, and at this stage and that is sufficient. *See Petrosino*, 2018 WL 1614349, at *7 ("Plaintiff properly pleaded that Defendant committed a deceptive act by labeling their products as 'natural' despite having synthetic ingredients.").

Defendant also argues that Plaintiff has not plausibly alleged that (1) corn starch, white corn flour, and citric acid are "derived from bioengineered material or that they are otherwise 'artificial or synthetic'"; or (2) that the inclusion of bioengineered materials in the Products would render their 'natural' labels misleading. ECF No. 8-1 at 31. Plaintiff alleges the following: that citric acid is "made synthetically by the fermentation of glucose," ECF No. 1 ¶ 50; that white corn flour and corn starch "are derived from GMO and GE seeds," and "89% of corn in the United States is genetically modified," *id*. ¶ 49; *id*. at 15 n.2; that these items are "highly-processed, synthetic, and/or genetically modified, and thus, are unnatural," *id*. ¶ 46; and that "[t]he presence of these ingredients in the Products caused the Products to not be 'Natural,'" *id*.

Plaintiff has alleged that the Products contain ingredients that render them not "natural" because (1) citric acid is made through a synthetic process; and (2) white corn flour and corn starch are derived from corn—the vast majority of which is genetically modified. ECF No. 1 at 15. These factual allegations raise a right to relief that is beyond speculative. Plaintiff specifically alleged that citric acid is made through a synthetic process and that the vast majority (89%) of corn in the United States is genetically modified. *Id*. at 15, 15 n.2. This overwhelming statistical allegation permits the inference that the white corn flour and corn starch in Defendant's Products were derived from genetically modified corn which—in turn—renders plausible Plaintiff's claims that the corn starch and white corn flour in the Products are "artificial or synthetic," not "natural." *See Kind II*, 287 F. Supp. 3d at 466 ("[Plaintiffs] identify the KIND products carrying particular GMO ingredients that are likely to have been derived from the vast majority of GMO crops in the United States. This is not an implausible reference to make on a motion to dismiss."); *see also Segedie*, 2015 WL 2168374, at *11 ("[I]t is enough that [p]laintiffs allege that 'natural' communicates the absence of synthetic ingredients.").

Based on the foregoing, the Court finds that Plaintiff's allegations state a claim upon which relief can be granted because they plausibly allege that Defendant engaged in deceptive conduct. Whether Defendant's allegedly deceptive mislabeling is misleading in a material way is a question that generally cannot be resolved on a motion to dismiss. *See Buonasera*, 208 F. Supp. 3d at 566 ("The Court . . . finds that whether [Defendant's] products are misleading to a reasonable consumer is a question of fact better suited for the jury.") (collecting cases); *see also Segedie*, 2015 WL 2168374, at *11 ("It is not unreasonable as a matter of law to expect that product labeled 'natural' or 'all natural' contains only natural ingredients."). Accordingly, Defendant's Motion to Dismiss for failure to allege deceptive conduct is DENIED.

## B. Unjust Enrichment Under New York Law

Defendant, citing New York law, argues that Plaintiff's unjust enrichment claims should be dismissed as duplicative of her GBL claims. ECF No. 8-1 at 32-33. In response, Plaintiff argues that the Court should decline to dismiss Plaintiff's unjust enrichment claims because Rule 8(d)(2) permits pleading in the alternative, and because there are outstanding questions of fact as to all of Plaintiff's claims. ECF No. 10 at 33.

To establish a prima facie claim for unjust enrichment under New York law, a plaintiff must show "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). An unjust enrichment claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). Accordingly, "[c]ourts in the Second Circuit have recognized that an

unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim." *Alce v. Wise Foods, Inc.*, No. 17 Civ. 2402 (NRB), 2018 WL 1737750, at *11 (S.D.N.Y. Mar. 27, 2018) (collecting cases) (citation and internal quotation marks omitted).

Here, Plaintiff alleges that Defendant was enriched at Plaintiff's expense due to its "deceptive, fraudulent, and misleading labeling, advertising, marketing and sales of the Products." ECF No. 1 ¶ 127. Plaintiff further alleges that "it would be against equity and good conscience" for Defendant to "retain the ill-gotten benefits" because the Products were not in line with Defendant's representations. *Id.* ¶ 128.

Based on these allegations, Plaintiff has "failed to explain how the unjust enrichment claim is not merely duplicative of the other causes of action." *See Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 194 (S.D.N.Y. 2016). Plaintiff's allegations "are a mere regurgitation of those made with respect to [P]laintiff's . . . claims under the GBL." *See Alce*, 2018 WL 1737750, at *12 (dismissing unjust enrichment claim as duplicative of GBL and District of Columbia Consumer Protection Procedures Act claims) (collecting cases); *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016) (dismissing unjust enrichment claim as duplicative because it was based on the same allegations underlying the plaintiff's GBL §§ 349 and 350 and breach of express warranty claims). Accordingly, Plaintiff's unjust enrichment claim under New York law is DISMISSED.

## IV.    Primary Jurisdiction

Defendant argues that this case should be dismissed or stayed pursuant to the primary jurisdiction doctrine, pending the USDA's development of the NBFDS genetically engineered food disclosure standard and the FDA's development of rules concerning "natural" food labels.

ECF No. 8-1 at 16. Defendant asserts that these ongoing rulemaking processes warrant a stay of this case. *Id*. at 16-17.

The primary jurisdiction doctrine is "relatively narrow in scope" and "is concerned with promoting the proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Petrosino*, 2018 WL 1614349, at *10 (citations and internal quotation marks omitted).

"No fixed formula exists for applying the doctrine of primary jurisdiction." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82 (2d Cir. 2006) (citing *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). However, courts reviewing the applicability of the doctrine generally consider four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82-83. Additionally, courts "must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id*. at 83 (citing *Nat'l Commc'ns Ass'n, Inc. v. AT&T Co.*, 46 F.3d 220, 222 (2d Cir. 1995)).

In November 2015, the FDA established "a docket to receive information and comments on the use of the term 'natural' in the labeling of human food products, including foods that are genetically engineered or contain ingredients produced through the use of genetic engineering." Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. 69905-01, 2015 WL 6958210 (proposed Nov. 15, 2015) (to be codified at 21 C.F.R. pt. 101).

Among other things, the FDA solicited comments and proposals addressing: (1) the type(s) of ingredients that would disqualify the food from bearing the term natural; (2) whether the manner in which an ingredient is produced or sourced should affect whether a food containing that ingredient may be labeled as 'natural'; (3) whether certain production practices used in agriculture, for example, genetic engineering... be a factor in defining 'natural'; and (4) whether the term 'natural' should only apply to 'unprocessed' foods and if so, how should 'unprocessed' and 'processed' be defined?

*In re Kind LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 3d 689, 692 (S.D.N.Y. 2016) ("*Kind I")* (citation, alterations, and internal quotation marks omitted). The FDA's notice-and-comment period ended in May of 2016. *See* U.S. Food & Drug Administration: "Natural" on Food Labeling (Aug. 2, 2018), *available at* https://www.fda.gov/Food/ GuidanceRegulation/GuidanceDocuments RegulatoryInformation/LabelingNutrition/ucm456090.htm. The FDA has not issued any guidance since the notice-and-comment period closed.

Several district courts in this Circuit have examined the propriety of a stay pending the FDA's "natural" food labeling process in confronting issues similar to the one at hand. *See Scholder v. Riviana Foods Inc.*, No. 16-cv-6002(ADS)(AKT), 2017 WL 2773586, at *2-3 (E.D.N.Y. June 23, 2017) (collecting cases). Like the *Scholder* court, this Court finds the *Kind I* court's analysis and application of the *Ellis* factors to be "persuasive," well-reasoned, and "appli[cable] with equal force" to the current matter. *See Scholder*, 2017 WL 2773586, at *3. Therefore, this Court "joins the growing number of courts who have deferred to the FDA's expert and specialized knowledge on this subject, and await pertinent guidance on the permissible uses of the term 'natural' in food labeling." *Id.* at *3.

Notably, the Court agrees that "natural" food labeling is within the FDA's discretion, and that awaiting FDA guidance on the issue "would almost certainly help harmonize court rulings," which is important because "Congress [did] not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide' in order

to avoid the need for '[m]anufacturers . . . to print 50 different labels.'" *Id.* (quoting *Kind I*, 209 F. Supp. 3d at 696) (citation omitted).

Plaintiff argues that a delay pending the FDA's rulemaking process would be "extremely prejudicial" and would prevent "the swift administration of justice." ECF No. 10 at 19. The Second Circuit, however, has "cautioned against" weighing potential delay as a relevant factor. *See Kind I*, 209 F. Supp. 3d at 696 (citing *Tassy v. Brunswick Hosp. Ctr., Inc.*, 296 F. 3d 65, 68 n.2 (2d Cir. 2002)).

Of course, staying the case will delay the ultimate resolution of this matter and the Court acknowledges that this case has already been pending for over a year and half. Furthermore, the status of the FDA's process and its future timeline are unclear. Based on these considerations, the Court finds that an indefinite postponement would be imprudent, but that a stay of limited duration is appropriate. *See Kind II*, 287 F. Supp. 3d at 471 (finding a limited stay appropriate because "[a]bsent any words from the FDA about its current progress, this Court cannot sit idly by on an illusory assurance that something is likely to happen").

Accordingly, Plaintiff's remaining claims are stayed until February 1, 2019. On this date, the parties must file a joint status report with any material updates to the FDA's and USDA's rulemaking processes and their respective positions on lifting the stay. [14] In the meantime, the parties must promptly update the Court on any relevant material developments in the rulemaking processes.

---

[14]    Because the Court finds that a stay of Plaintiff's remaining claims is appropriate based solely on the FDA's ongoing rulemaking process regarding "natural" food labeling, it need not reach whether a stay would be warranted based solely on the USDA's promulgation of the NBFDS's genetically engineered food disclosure standard. The Court will permit the parties to raise this issue again in their joint status report and will, if necessary, consider this issue at that time.

## CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss (ECF No. 8) is GRANTED IN PART and DENIED IN PART. The only claims remaining are (1) Plaintiff's individual claims under GBL §§ 349-50 arising from her purchase of the Chicken Seasoning Mix; and (2) the "natural" and "all natural" claims brought on behalf of the absent class members under GBL §§ 349-50, MCC § 13-301, and Maryland common law. All claims for injunctive relief are DISMISSED.

Defendant's Motion to Stay is GRANTED, and the remaining claims are stayed until February 1, 2019, at which time the parties must file a joint status report with any material updates on the FDA and USDA rulemaking processes and their respective positions on lifting the stay.

Finally, Plaintiff requests leave to amend her Complaint "[i]f the Court grants any part of Defendant's motion to dismiss." ECF No. 10 at 33 n.2. Plaintiff has not, however, properly moved to amend her Complaint, which requires her to "attach an unsigned copy of the proposed amended pleading as an exhibit to the motion." Loc. R. Civ. P. 15(a). Therefore, Plaintiff's request for leave to amend is DENIED without prejudice.


IT IS SO ORDERED.

Dated: August 14, 2018
      Rochester, New York

 

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court